### IN THE UNITED STATES DISTRICT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| W.W. GRAINGER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | Jury Trial Demanded |
| COMPANY OF PITTSBURGH, PA. | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff W.W. Grainger, Inc. ("Grainger") hereby complains against National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") as follows:

### INTRODUCTION

1. This insurance coverage suit arises from National Union's vexatious and unreasonable refusal to honor its contractual obligations under the CrimeGuard all-risk theft insurance policy issued to Grainger in May 2008. Without any reasonable basis for doing so, National Union has failed to acknowledge coverage and pay Grainger for the loss Grainger incurred as a result of the theft of Grainger's property by individuals (the "Thieves") posing as a Grainger supplier.

### JURISDICTIONAL STATEMENT

2. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) because it involves matters in controversy exceeding the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

**VENUE**

3. Venue in this district is proper under 28 U.S.C. § 1391(a) (1) and (2) because National Union is deemed to reside in this district for purposes of venue and because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

**PARTIES**

4. Plaintiff, W.W. Grainger, Inc., is a company incorporated under the laws of the State of Illinois with its headquarters located in Lake Forest, Illinois.

5. Defendant, National Union Fire Insurance Company of Pittsburgh, PA., is an insurance company incorporated under the laws of the State of Pennsylvania and, upon information and belief, is headquartered in New York, New York. National Union is a subsidiary of Chartis Inc. and Chartis U.S., Inc., which were formed in connection with the restructuring of the businesses of American International Group, Inc. ("AIG").

**BACKGROUND**

6. National Union sold Grainger a "CrimeGuard" insurance policy ("the CrimeGuard Policy") covering the period from May 1, 2008 to May 1, 2009.

7. According to its promotional materials, National Union's CrimeGuard Policy "provides U.S. companies with superior insurance for a wide array of crime-related exposures. Rather than addressing the risk of loss piecemeal, CrimeGuard provides expansive, worldwide crime protection through a single, comprehensive insuring agreement. It also offers insureds a uniquely cost-effective and efficient claims settlement process . . . ."

8. Under the express terms of the CrimeGuard Policy, National Union is contractually obligated to "indemnify the Insured for loss of assets unless otherwise excluded by the terms and conditions of this policy." The CrimeGuard Policy defines "loss" as "the direct deprivation of the Insured by a single act or a series of related acts resulting from dishonesty, dissolution or forgery occurring during the Policy Period and reported to the Company during the Policy Period or Discovery Period." "Dissolution" is defined as "the actual destruction or disappearance of money or securities; or the wrongful abstraction of assets resulting from theft by any natural person other than an employee . . . ." "Assets" is defined as "money, securities or other property for which the Insured is legally liable, or which is owned or held by the Insured in any capacity, whether or not the Insured is legally liable therefore."

9. Beginning in July 2008 continuing until mid-September 2008, Grainger was the victim of a criminal scheme resulting in the theft of $3,171,107.30 ("the Stolen Money") from Grainger. The scheme was accomplished by the Thieves, who purported to represent a Grainger supplier. The Thieves induced Grainger to wire transfer the Stolen Money to a bank account directly or indirectly controlled by the Thieves.

10. When Grainger discovered the theft of the Stolen Money in September 2008, it immediately contacted the bank ("the Bank") to which it had wire transferred the Stolen Money and requested that the Bank freeze the account into which the Stolen Money had been transferred. The Bank agreed to do so. Grainger also contacted federal law enforcement officials relating to the theft and has cooperated fully with their investigation.

11. The Bank subsequently returned to Grainger all of the Stolen Money remaining in the account at the time Grainger requested that the account be frozen. Through its own efforts, Grainger recovered $1,306,196.67 of the $3,171,107.30 that had been stolen. National Union approved of the terms of the agreement between Grainger and the Bank by which Grainger was able to recover this portion of the Stolen Money.

12. Grainger provided timely notice under the CrimeGuard Policy of the theft of the Stolen Money. Grainger has fully cooperated in National Union's investigation of the theft of the Stolen Money.

13. Grainger is informed and believes that National Union retained Studler, Doyle & Company, LLC, ("Studler Doyle") to investigate the theft of the Stolen Money and to prepare a report ("the Studler Doyle Report"). Grainger is informed and believes that National Union has received the Studler Doyle Report. National Union has declined to provide Grainger a copy of the Studler Doyle Report.

14. After many requests by Grainger for National Union to honor its contractual obligations or state its position with respect to Grainger's demand for indemnification for the loss of the Stolen Money, in a letter dated October 21, 2009 ("the October 21 Letter"), National Union asserted various reasons why the CrimeGuard Policy purportedly did not provide coverage for Grainger's loss. The positions taken by National Union in the October 21 Letter are frivolous and demonstrate National Union's bad faith. Among other things, National Union takes the position that:

    (a) the CrimeGuard Policy fails to expressly provide coverage for thefts accomplished through electronic transfers of money;

    (b)    the $3,171,107.30 stolen from Grainger did not fall within the CrimeGuard Policy definition of "money" because an electronic transfer does not constitute a "physical manifestation of money;" and

    (c)    the theft of the Stolen Money is excluded from coverage by an exclusion covering a "loss or damage resulting from dissolution arising out of the giving or surrendering of assets in any exchange or purchase."

15. Each of these contentions demonstrates National Union's bad faith. The CrimeGuard Policy provides coverage for all thefts unless expressly excluded and a theft of an insured's money or property accomplished by a theft of wire transferred money is not expressly excluded. Likewise, a wire transfer of $3,171,107.30 plainly involves "money" and in any event, the relevant definition of "Assets," which National Union selectively quotes in its October 21 Letter, is "money, securities or other property … owned or held by the Insured in any capacity . . . ." The $3,171,107.30 stolen by the Thieves from Grainger was indisputably "property . . . owned" by Grainger. Finally, the fact that the Thieves pretended to be a Grainger supplier does not convert the theft of Grainger's money into a loss "arising out of the giving or surrendering of assets in any exchange or purchase." Grainger had not purchased anything from the Thieves.

**Count I**

**Breach of Contract**

16. Grainger restates and incorporates paragraphs 1 through 15 above as if fully set forth herein.

17. National Union has refused to perform its contractual obligation under the CrimeGuard Policy to indemnify Grainger for the loss it has suffered as a result of the theft of the Stolen Money. Accordingly, National Union is in breach of contract.

18. Grainger has been damaged by National Union's breach. Among other things, Grainger has been denied the benefits of the insurance coverage for which it contracted and for which Grainger paid National Union a substantial premium. In addition, Grainger has incurred substantial burden, expense, and further disruption in seeking to have National Union honor its contractual obligations and in bringing this action.

## Count II

### Vexatious and Unreasonable Conduct under Illinois Insurance Code Section 155

19. Grainger restates and incorporates paragraphs 1 through 15 and 17 and 18 above as if fully set forth herein.

20. National Union has acted vexatiously and unreasonably by, among other things, the following, all in violation of Illinois Insurance Code Section 155:

   a. Unreasonably delaying performance of its indemnity obligations and increasing the expense incurred by Grainger in obtaining the indemnification to which it is entitled under the CrimeGuard Policy;

   b. Asserting frivolous defenses to coverage that have no basis in fact and that are contrary to the express terms of the CrimeGuard Policy drafted by National Union.

21. National Union's conduct, as alleged above, has been undertaken in bad faith and solely to avoid payment of the full amount of its contractual obligations.

## PRAYER FOR RELIEF

Wherefore, W.W. Grainger, Inc., respectfully requests that the Court grant it the following:

   1. a declaration pursuant to 28 U.S.C. § 2201 that the CrimeGuard Policy contractually obligates National Union to indemnify Grainger for the theft of the Stolen Money;

2. an award of $1,364,910.63, representing the portion of the Stolen Money that Grainger was unable to recover less the amount of the deductible, plus prejudgment interest;

3. an award of the expense Grainger incurred in recovering $1,306,196.67 of the Stolen Money for the benefit of National Union;

4. an award of the actual and consequential damages that Grainger has suffered as a result of National Union's breach, in an amount to be determined at trial;

5. an award of the costs, including attorneys' fees, that Grainger incurs in connection with bringing and pursuing this action, along with the maximum statutory penalty that Illinois Insurance Code Section 155 allows; and

6. such additional relief is just and appropriate under the circumstances.

## Jury Demand

W.W. Grainger, Inc. demands a trial by jury on all issues triable to a jury.

Dated: December 2, 2009

**W.W. Grainger, Inc.**

By:   /s/ Robert T. Markowski
      One of its attorneys

Robert T. Markowski
Spiridoula Mavrothalasitis
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: rmarkowski@jenner.com
       smavrothalasitis@jenner.com